# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **WILBER L. FONTENOT** | * | **CIVIL ACTION NO. 2:15-CV-01774** |
| | * | |
| **v.** | * | |
| | * | **JUDGE ROBERT G. JAMES** |
| **REPUBLIC NATIONAL** | * | |
| **DISTRIBUTING CO., LLC** | * | |
| | * | **MAG. JUDGE KATHLEEN KAY** |
| | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## RULING

This is an action brought by Plaintiff Wilber L. Fontenot ("Fontenot") against Defendant Republic National Distributing Co., L L C ("RNDC"). Fontenot asserts a claim of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and its state counterpart, the Louisiana Age Discrimination in Employment Act ("LADEA"), La. Rev. Stat. § 23:311, *et seq.* [Doc. No. 1].

Pending before the Court is RNDC's Motion for Summary Judgment [Doc. No. 17]. For the following reasons, RNDC's Motion for Summary Judgment is **DENIED**.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Fontenot worked for Magnolia Marketing as a sales representative and supervisor for the Lake Charles, Louisiana market for roughly 9 years starting in or about 1976. [Doc. No. 17-7, p. 1; Doc. No. 21-9, p. 1]. A couple years after leaving for other employment, Fontenot returned to Magnolia Marketing, as a sales representative in the Lake Charles market. *Id.* Shortly after returning, Fontenot was promoted to a supervisory position over the same market. *Id.* Magnolia Marketing became Republic Beverage Company in 1997, and Fontenot remained employed through the transition. [Doc. No. 17-7, p. 2; Doc. No. 21-9, p. 1]. In 2007, Republic Beverage Company merged with National Distributing Company, Inc., to form Republic National

Distributing Company, LLC, and Fontenot became an employee of RNDC at that time. *Id.* Fontenot was sixty-one years old at the time RNDC formed. [Doc. No. 17-7, p. 4; Doc. No. 21-9, p. 2].

Throughout his time with RNDC, Fontenot held a supervisory position in the Lake Charles market over sales representatives who reported to him and who performed the everyday servicing of RNDC's accounts. [Doc. No. 17-7, p. 2; Doc. No. 21-9, p. 1]. During the years most pertinent to this litigation, 2009 to 2013, Fontenot held the position of District Manager in Lake Charles with responsibilities including direct oversight of the Lake Charles sales representatives. *Id.* Prior to 2009, Fontenot reported to Steve Brignac ("Brignac"), Division Manager for the mid-Louisiana territory. [Doc. No. 17-2, p. 38; Doc. No. 17-3, pp. 1, 2]. In 2009, RNDC created two "Area Manager" positions and hired Brandon Richard ("Richard") for one of the positions; Richard was in his late twenties at the time. [Doc. No. 17-7, pp. 2, 3; Doc. No. 21-9, p. 2]. In this position, Richard was Fontenot's direct supervisor. [Doc. No. 17-4, p. 2; Doc. No. 21, p. 3]. Richard reported to Brignac. [Doc. No. 17-7, p. 3; Doc. No. 21-9, p. 2]. Brignac was in his early sixties between 2009 and 2013. *Id.*

As District Manager, Fontenot's responsibilities included, *inter alia*: "the discrete execution of sales initiatives; training and developing his sales associates; directing his sales associates' achievements in regards to sales goals, blitzes, and promotional programs; meeting with key accounts; ensuring that his sales team serviced their accounts; and making sure his sales associates performed satisfactorily; monitoring the Lake Charles market; and preparing and maintaining required paperwork, reports and records." [Doc. No. 17-7, pp. 4-5; Doc. No. 21-9, p. 2].

Starting in 2010, RNDC began documenting areas in which Fontenot needed to improve his job performance. On March 15, 2010, Brignac issued Fontenot a written warning concerning Fontenot's poor job performance stating that Fontenot was not, *inter alia*, "using preplans to give goals to his team; filling out weekly time management forms; following up on suppliers; following up on his sales representatives; and turning in information when asked." [Doc. No. 17-7, p. 5; Doc. No. 21-9, p. 3]. Fontenot received annual performance reviews for the years 2010 through 2012[1] in which he received an overall rating of "meets expectations," with a "needs improvement" rating as to certain areas of his job performance including: "develop talent at all levels" (2010 and 2011); "attract, coach and promote/develop new talent" (2010 and 2011); "demonstrate continuous improvement" (2011); "negotiate conflict through collaboration" (2011); and "implement continuous improvement" (2011 and 2012). [Doc. No. 17-4, Exhs. 1-3].

On August 18, 2013, six months after Fontenot's 2012 performance review, RNDC placed Fontenot on a ninety-day Performance Improvement Plan ("PIP"), identifying specific performance goals to improve during that time period, including communication between management and sales team; market performance on new item launches and special initiatives; and management style to grow new sales reps into management positions. [Doc. No. 17-7, p. 7; Doc. No. 21-9, p. 3]. During that ninety-day period, Brignac, Richard and two other RNDC managers accompanied Fontenot's sales representatives on their sales calls. [Doc. No. 17-7, p. 7; Doc. No. 21-9, p. 3].

RNDC claims that after the "ride alongs" the managers concluded that Fontenot's territory "was in need of immediate change." [Doc. No. 17-7, p. 7]. RNDC further claims that over the

---

[1] Generally, performance reviews were conducted in January or February for an employee's performance over the preceding calendar year. *See* [Doc. No. 17-7, p. 5, n. 31].

ninety-day period Fontenot did not satisfactorily improve in the areas identified in his PIP. *Id.* at

p. 8. According to RNDC, Brignac and Richard met with Fontenot at the thirty-day and sixty-day

mark to review Fontenot's progress and offer examples of performance deficiencies and ways to

improve. *Id.* at pp. 7-8. Fontenot, on the other hand, claims that one of the four managers involved

told him that the "ride alongs" were a "witch hunt." [Doc. No. 21-9, p. 3]. Fontenot further claims,

without citation to the record, that Richard and Brignac did not offer examples or recommendations

at the PIP review meetings. *Id.* at p. 4.

At the end of the ninety-day PIP period, in November 2013, RNDC claims that Brignac

and Richard determined that Fontenot's employment should be terminated. [Doc. No. 17-7, p. 8;

Doc. No. 21-9, p. 4 (admitted to the extent that Fontenot was terminated in November 2013)]. At

the time of his termination, Brignac told Fontenot that he was being discharged based on his

performance. [Doc. No. 17-7, p. 8; Doc. No. 21-9, p. 4].

In late April 2014, Fontenot filed a charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC") alleging discrimination on the basis of age in violation of the

ADEA and retaliation for having reported alleged violations of state laws and regulations

governing the sale of alcohol by Richard before he became Fontenot's supervisor. [Doc. No. 1, pp.

2, 6]. The EEOC issued Fontenot a notice informing him that it was closing its file on Fontenot's

charge and informing Fontenot of his right to sue, which Fontenot received on or about March 7,

2015. *Id.* at p. 6, Exh. 1. Fontenot filed suit against RNDC on May 28, 2015, alleging that: (1)

RNDC discriminated against him based on his age by terminating his employment, in violation of

the ADEA and the LADEA, and (2) that his termination violated Louisiana's Whistleblower

Statute, LA. REV. STAT. § 23:967. *Id.* The case was assigned to Judge Minaldi in the Lake

Charles Division of the Western District of Louisiana.

On July 27, 2015, RNDC filed a motion to dismiss Fontenot's retaliation claim under Louisiana's Whistleblower Statute as time-barred. [Doc. No. 4]. On March 24, 2016, the Court granted the motion and dismissed the retaliation claim. [Doc. No. 11]. A jury trial was set in this matter for June 19, 2017. [Doc. No. 15]. On March 21, 2017, RNDC filed the instant Motion for Summary Judgment, alleging that Fontenot cannot make out a *prima facie* case of age-discrimination and cannot rebut RNDC's legitimate, non-discriminatory reason for terminating him, or otherwise show that, but for his age, Fontenot would not have been terminated. [Doc. No. 17]. Fontenot filed an opposition to the Motion for Summary Judgment on April 28, 2017, alleging there is evidence which presents a genuine dispute as to material facts and further suggesting that Fontenot was awaiting discovery responses from RNDC that would support his claims. [Doc. No. 21]. On May 3, 2017, the trial was continued due to the pendency of the Motion for Summary Judgment. [Doc. No. 22]. On May 5, 2017, Fontenot filed a Motion to Compel RNDC's discovery responses. [Doc. No. 23]. The motion was referred to Magistrate Judge Kay. [Doc. No. 24]. RNDC filed a reply in further support of the Motion for Summary Judgment on May 11, 2017. [Doc. No. 25].

On May 18, 2017, the case was reassigned to the undersigned. [Doc. No. 26]. On May 31, 2017, the Court issued an Order staying consideration of the Motion for Summary Judgment pending the outcome of the Motion to Compel. [Doc. No. 28]. Subsequently, the Magistrate Judge granted in part and denied in part the Motion to Compel, [Doc. No. 29], and the Court granted the parties the opportunity to file supplemental responses to the Motion for Summary Judgment on June 26, 2017. [Doc. No. 30]. Fontenot filed a supplemental memorandum in opposition to the Motion for Summary Judgment on July 24, 2017. [Doc. No. 31]. RNDC filed a supplemental reply brief in support of the Motion for Summary Judgment on July 31, 2017. [Doc. No. 32]. On

September 7, 2017, a new trial date was set for March 12, 2018, in Lake Charles, Louisiana. [Doc. No. 34].

## II.    LAW AND ANALYSIS

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c). The moving party bears the initial burden of informing the Court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Topalian*, 954 F.2d at 1131. In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "However, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Summary Judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (internal quotation marks and citations omitted).

**B. Age Discrimination Under the ADEA and LADEA**

Fontenot alleges that RNDC discriminated against him on the basis of his age, in violation of the ADEA and the LADEA. [Doc. No. 1, p. 6]. Under the ADEA, "[i]t shall be unlawful for an employer … to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The LADEA provides substantially the same language. *See* LA. REV. STAT. § 23:312(A)(1); *see also LaBove v. Raftery*, 2000-C-1394, 2000-C-1423 (La. 11/28/01); 802 So.2d 566, 573. Both the ADEA and the LADEA prohibit such discrimination against individuals who are at least forty years of age. 29 U.S.C. § 631; LA. REV. STAT. § 23:311.

When a plaintiff alleges age discrimination, "'liability depends on whether the protected trait … actually motivated the employer's decision.'" *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)); *see also O'Boyle v. La. Tech Univ.*, 32,212-CA (La. App. 2 Cir. 10/1/99); 741 So.2d 1289, 1290 ("The Louisiana Act mirrors the federal ADEA and should be construed in light of federal precedent.")). More specifically, the individual's age must have "'actually played a role in [the employer's decision making] process and had a determinative influence on the outcome.'" *Reeves*, 530 U.S. at 141 (quoting *Hazen Paper Co.*, 507 U.S. at 610). Therefore, by a preponderance of the evidence, the plaintiff must prove that age was the "but-for" cause of the challenged adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009).

A plaintiff may demonstrate age discrimination by direct or circumstantial evidence. *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)). "Direct evidence is evidence that, if believed, proves the

fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). Evidence is circumstantial when an inference is required for the evidence to tend to prove discriminatory animus. *Id.* at 897-98.

In age discrimination cases involving circumstantial evidence, the Fifth Circuit applies the *McDonnell Douglas* burden-shifting framework.[2] *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also Robinson v. Bd. of Supervisors for Univ. of La. Sys.*, 2016-C-2145, 2017 WL 2837149, at *3 (La. 6/29/17) (applying the *McDonnell Douglas* burden-shifting framework and United States Supreme Court and Fifth Circuit precedent to its analysis of claims brought under the ADEA and the LADEA). Accordingly, under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of age discrimination. *Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013). To establish a *prima facie* case of age discrimination under the ADEA and the LADEA, a plaintiff must prove: (1) he is within the protected class; (2) he is qualified for the position; (3) he suffered an adverse employment decision; and (4) he was replaced by someone younger or treated less favorably than similarly situated younger employees. *Leal v. McHugh*, 731 F.3d 405, 410-11 (5th Cir. 2013) (citing *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003)). Establishing a *prima facie* case creates a presumption of discrimination. *See Sandstad*, 309 F.3d at 897.

If a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant produces such a reason, the presumption of discrimination disappears, and the burden shifts back

---

[2] Although the Supreme Court has not definitively resolved whether the *McDonnell Douglas* framework is applicable to ADEA claims, the Fifth Circuit has noted that it is bound by precedent to apply the framework to age discrimination claims involving circumstantial evidence. *Jackson*, 602 F.3d at 378 (collecting cases). Both Fontenot and RNDC agree that the *McDonnell Douglas* framework applies to Fontenot's claims. *See* [Doc. No. 17-1, pp. 6-11 (essentially setting forth the *McDonnell Douglas* framework); Doc. No. 21, p. 10].

to the plaintiff to prove either that the proffered reason was pretext for discrimination or that, even if the proffered reason were true, the plaintiff's age was the "but-for" cause of the adverse employment action. *Miller*, 716 F.3d at 144.

### C. *Prima Facie* Case of Age Discrimination

RNDC claims that summary judgment is appropriate because Fontenot cannot establish a *prima facie* case of age discrimination. [Doc. No. 17, p. 1]. RNDC admits that Fontenot may establish the first, third, and fourth elements of a *prima facie* case of age discrimination, namely that he was: (1) in the protected class, i.e. he was at least forty years old; (3) he suffered an adverse employment action, i.e. he was terminated from RNDC; and (4) he was replaced by someone outside of the protected class. [Doc. No. 17-1, p. 6]. However, RNDC alleges that Fontenot cannot establish the second element, that he was qualified for his position. *Id.* at pp. 6-7. RNDC asserts that in order to establish this element, Fontenot must show that he "was doing his job well enough to rule out the possibility that he was fired for inadequate job performance, absolute or relative." *Id.* at p. 7 (quoting *Johnson v. La. Health Scis.*, No. 3-05-0356, 2006 WL 1581204, at *3 (W.D. La. May 2, 2006) (quoting *Wilkins v. Eaton Corp.*, 790 F.2d 515 (6th Cir. 1986))). RNDC claims that Fontenot cannot meet this burden because he had a history of performance deficiencies and failed to improve during his Performance Improvement Plan leading to his termination. [Doc. 17-1, pp. 6-7].

Under Fifth Circuit law:

> [a] plaintiff challenging his termination or demotion … can ordinarily establish a *prima facie* case of age discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action …
>
> By this we mean that the plaintiff had not suffered physical disability or loss of a necessary professional license or some other

> occurrence that rendered him unfit for the position for which he was hired.

*Berquist*, 500 F.3d at 350 (quoting *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1506 & n. 3 (5th Cir. 1988)). Evidence of an employer's subjective determination of poor job performance is insufficient to "prove a lack of qualifications at the *prima facie* stage."[3] *Id.* at 351.

Here, Fontenot held the position of District Manager[4] from at least 2009. *See* [Deposition of Wilber Fontenot, (Doc. No. 17-2), pp. 21-22]. RNDC has not cited any evidence nor raised any argument beyond poor job performance that Fontenot was not qualified for his position. *See* [Doc. No. 17-1, pp. 6-9]. As the Fifth Circuit has concluded, evidence of poor job performance does not prove that an employee was not qualified for the position at the *prima facie* stage. *See Berquist*, 500 F.3d at 351. Because RNDC has not met its burden to identify portions of the record which highlight the absence of a genuine issue of material fact as to whether Fontenot was qualified for the position, the Court will not grant summary judgment on this issue. For the purposes of considering the remainder of RNDC's motion, the Court presumes, without deciding, that Fontenot can establish a *prima facie* case of age discrimination.

### D. Legitimate Non-Discriminatory Reason for Fontenot's Termination

Assuming that Fontenot can establish a *prima facie* case of age discrimination, the burden shifts to RNDC to provide a legitimate, nondiscriminatory reason for terminating Fontenot. *See Miller*, 716 F.3d at 144. RNDC claims that it terminated Fontenot due to his poor and

---

[3] The Court notes that RNDC relies on language in a Report and Recommendation, adopted by this Court in 2006, which quoted the Sixth Circuit for the proposition that job performance was relevant to the issue of whether a plaintiff was qualified for the position. [Doc. No. 17-1, pp. 7-8]. However, the Report and Recommendation ultimately addressed the issue of job performance when considering whether the defendant's reason for termination was pretext, and, thus, did not conclude that the plaintiff had not made a *prima facie* case that he was qualified for the position. *Johnson*, 2006 WL 1581204, at *3-*4.

[4] The record is unclear as to whether the title "District Manager" was used prior to 2009. *See* [Doc. No. 17-2, pp. 21-22].

unsatisfactory performance, and provides evidence of a written warning in March 2010, his annual performance reviews from 2010 to 2012, and the Performance Improvement Plan in 2013, leading to his termination in November 2013. [Doc. No. 17-1, pp. 10-11. The Fifth Circuit has held that a charge of poor work performance coupled with "specific examples predating the termination and known to the decisionmaker at the time of the decision" is a sufficient showing of a legitimate, nondiscriminatory reason for terminating an employee. *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 231, 233 (5th Cir. 2015). Accordingly, RNDC has met its burden to produce a legitimate, nondiscriminatory reason for terminating Fontenot.

### E.  Pretext or "But-For" Causation

Because RNDC has provided a legitimate, nondiscriminatory reason for Fontenot's termination, the burden shifts back to Fontenot to produce evidence that creates a genuine dispute as to whether RNDC's proffered legitimate, nondiscriminatory reason was merely pretext for age discrimination or that, but for his age, Fontenot would not have been terminated. *Miller*, 716 F.3d at 144. RNDC alleges that Fontenot cannot rebut RNDC's legitimate, non-discriminatory reasons for his termination, or otherwise establish that, but for his age, he would not have been terminated. [Doc. No. 17, p. 1]. In turn, Fontenot relies on circumstantial evidence to raise a number of arguments that he contends creates a genuine issue of material fact as to whether RNDC terminated him because of his age. [Doc. Nos. 21, 31]. The evidence that Fontenot introduces in support falls generally into three categories: (1) that his job performance was adequate, (2) that his supervisors held an age-bias, and (3) that he was replaced by younger, less experienced individuals.

First, Fontenot claims that his job performance cannot be the reason for his termination because his job performance was adequate. [Doc. No. 21, p. 13]. Fontenot introduces evidence that he had received an overall rating of "meets expectations" on his 2010, 2011, and 2012 performance

reviews. *Id.* at pp. 3, 13 (citing 2010-2012 Annual Performance Reviews for Wilber Fontenot, Exh. 5). Fontenot also introduces evidence of his earned monetary incentives from 2011 through 2013, which he alleges were based on job performance. *Id.* at pp. 5-6, 13 (citing Employee Earnings by Earnings Code, 2011-2013, Exh. 5). Further, in response to RNDC's Statement of Undisputed Material Facts, Fontenot asserts that one of the managers involved in the "ride along" during his PIP, Greg Young, told him that the "ride alongs" were a "witch hunt." [Doc. No. 21-9, p. 3 (citing Exh. 1, p. 40)]. Thus, Fontenot claims that RNDC's proffered reason of poor job performance is not true. [Doc. No. 21, p. 13].

In opposition, RNDC argues that Fontenot's overall rating does not negate the fact that Fontenot had a four-year history of performance deficiencies in his managerial and administrative responsibilities. [Doc. No. 25, p. 4]. RNDC claims that Fontenot's reference to incentive payments is an attempt to "avoid addressing the substance of his managerial and administrative performance issues" and, further, that the incentive payments that Fontenot received were not awarded or established by RNDC and were based on group sales rather than Fontenot's individual sales. [Doc. No. 25, p. 5]. Finally, RNDC contends that Fontenot's "witch hunt" reference is unsupported by competent evidence, because such evidence is hearsay and outside of the record. [Doc. No. 25, p. 7].

In a case with similar facts in this respect, the Fifth Circuit upheld a jury verdict for the plaintiff when the plaintiff submitted, *inter alia*, evidence that he had received praise for certain aspects of his work and salary increases during the period in which he also received criticism. *Reeves v. Gen. Foods Corp.*, 682 F.2d 515, 524 (5th Cir. 1982) (hereinafter "*Gen Foods Corp.*"); *see also Burton*, 798 F.3d at 234 (considering the positive reviews and comments in plaintiff's performance reviews in considering pretext). Here, Fontenot had received "meets expectations"

for his overall rating on his performance reviews, [Doc. No. 17-4, Exhs. 1-3], and had received monetary incentives for reaching sales goals in his district. [Doc. No. 21, p. 5-6 (citing Exh. 5, pp. 22-24)]. In a number of areas on his performance reviews, he had received a rating of "above expectations." *See e.g.*, [Doc. No. 21-5, pp. 29, 33, 43, 44, 45, 46, 54]. Further, although RNDC cites documentation of performance deficiencies on three annual performance reviews as evidence of continuing deficiencies in Fontenot's managerial and administrative responsibilities, the 2012 performance reviews reflect improvement of Fontenot's performance in a number of areas to a rating of "meets expectations." *See e.g., id.* at pp. 51, 54 (improvements marked in, *inter alia*, developing talent at all levels; attracting, coaching, and promoting talent; and completing coaching guides). Fontenot has also cited deposition testimony which raises a question as to the source of the monetary incentives he earned. *See* [Doc. No. 21-9, p. 2 (citing Deposition of Steve Brignac, (Doc. No. 21-2), pp. 50, 51 (stating that RNDC shared in the incentive programs with the suppliers))].

The evidence introduced by Fontenot of his overall performance and earned monetary incentives may be probative as to whether his termination was motivated by age discrimination. However, with respect to the "witch hunt" statement, although Fontenot identifies the individual he claims made the statement in his Response to Defendant's Statement of Undisputed Material Facts, [Doc. No. 21-9, p. 3], Fontenot cites his own deposition testimony in which he does not name the individual, nor extrapolate as to what he meant by "witch hunt." *See* [Doc. No. 17-2, p. 40]. Because the Court finds that evidence of Fontenot's overall job performance and earned monetary incentives may be enough to defeat summary judgment, the Court declines to consider at this time whether Fontenot's "witch hunt" testimony is relevant competent summary judgment evidence.

Second, Fontenot claims that the timing of his poor job performance reviews and remarks made by his supervisors are evidence supporting an inference of age discrimination by his supervisors. [Doc. No. 21, pp. 13-14]. Fontenot claims that his alleged performance issues were raised when Richard, a younger man by roughly thirty-six years, became his supervisor in 2009. *Id.* at pp. 3, 13. At this point, Fontenot claims, he was no longer able to hire the sales representatives of his choice, but was forced to consider only college graduates. *Id.* at p. 13. RNDC counters that Brignac was the first person to document Fontenot's poor performance in 2010, issuing a written warning as to Fontenot's poor job performance. [Doc. No. 25, p. 4]. RNDC further counters that even prior to Richard becoming Area Manager, Fontenot did not have the authority to hire anyone. *Id.* at p. 3.

The parties have not provided, and the Court could not find, Fifth Circuit case law addressing whether a new and younger supervisor timed with the start of documented poor job performance is relevant evidence of age discrimination. The Court notes that other district courts in the Fifth Circuit have relied on the Eleventh Circuit for the proposition that differences of performance evaluation do not establish a genuine issue of pretext because "'[d]ifferent supervisors may impose different standards of behavior, and a new supervisor may decide to enforce policies that a previous supervisor did not consider important.'" *Harkenss v. Bauhaus U.S.A., Inc.* 86 F.Supp. 3d 544, 560 (N.D. Miss. 2015) (quoting *Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002)); *Brooks v. Houston Indep. Sch. Dist.*, 86 F.Supp. 3d 577, 587 (S.D. Tex. 2015). The Court agrees with the other district courts that the timing of poor performance reviews that coincide with the start of a new supervisor is not on its own probative of an age-based discriminatory animus. Fontenot's argument that he was not able to hire his preferred sales representatives is similarly not probative because he admitted in his deposition that he did not have

such authority prior to Richard becoming his supervisor. *See* [Deposition of Wilber Fontenot, (Doc. No. 17-2), p. 118].

Fontenot further alleges that three RNDC managers made remarks implying that he was too old for his position. [Doc. No. 21, pp. 6, 13]. Fontenot claims that Richard evinced discriminatory animus in his comment on his 2012 performance review, issued in early 2013, that "[Fontenot] will be challenged with reviewing his management style to accommodate a younger generation of salesmen." *Id.* at pp. 4, 13 (citing Exh. 5, p. 54). Fontenot also asserts that Brignac evinced discriminatory animus by repeatedly asking him during the last two years of his employment "about how old he was, stating he was getting on up in years, and when was he going to retire, as well as how hard it was to work with the young people coming in, implying that Fontenot could not handle it." *Id.* at pp. 6, 13-14 (citing Exh. 1, pp. 90, 91, 109, 110, 122). Third, Fontenot claims that Dwight Prudhomme[5] ("Prudhomme") evinced a discriminatory animus by testifying at his deposition that Fontenot's performance began to drop off because the company and business had changed such that "in the old days, we could get by … we had manual reports … technology and business grew [providing suppliers with] more transparency…." *Id.* at p. 6 (citing Exh. 3, p. 21). Fontenot contends that Prudhomme implied that Fontenot was too old to work in the modern business model. *Id.* RNDC denies that Brignac questioned Fontenot about his retirement, but that even if he did, they constitute stray remarks insufficient to defeat summary judgment. [Doc. 25, pp. 6-7]. RNDC also contends that Prudhomme's comment of "in the old days" was not directed toward Fontenot but was an explanation as to how RNDC's business had changed. *Id.* at p. 6.

---

[5] According to Fontenot, without citation, Dwight Prudhomme is the Branch Manager for Lafayette & Shreveport with RNDC. *See* [Doc. No. 21, p. 6]. The excerpt of Prudhomme's deposition testimony attached to Fontenot's response memorandum did not include any testimony describing who Prudhomme is.

When comments are used as circumstantial evidence of age discrimination, "the comments must show: '(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker.'' *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475-76 (5th Cir. 2015) (quoting *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224 (5th Cir. 2015) (internal quotation marks omitted). "[S]o long as remarks are not the only evidence of pretext, they are probative of discriminatory intent." *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577 (5th Cir. 2003). In *Machinchick v. PB Power, Inc.*, the Fifth Circuit found that a description of the plaintiff as having "'[l]ow motivation to adapt' to change," being "inflexible," and "not adaptable" were enough to support an inference of age discrimination. 398 F.3d 345, 353 (5th Cir. 2005). In *Bienkowski*, the Fifth Circuit found that supervisors' comments about an inability or willingness to "adapt" to new systems were indirect comments about the plaintiff's age and adaptability and may be probative of an unlawful discriminatory intent, particularly in conjunction with the disagreements over the plaintiff's job performance. 851 F.2d at 1507 & n. 4.

The comments of Richard and Brignac both indirectly refer to Fontenot's age by questioning his ability to work with the younger workers, which may lead a reasonable jury to infer age discrimination. Further, Richard and Brignac were the individuals who decided that Fontenot's employment should be terminated. *See* [Doc. No. 17-7, p. 8]. Therefore, both elements of the test are satisfied. Further, these remarks are not the only evidence produced by Fontenot, but are part of a larger showing of circumstantial evidence. On the other hand, Prudhomme's comment of "in the old days" does not satisfy the test. It is less than clear that Prudhomme's comment evinced discriminatory animus, but the comment clearly fails the test with respect to the

second element. The parties have not clarified who Prudhomme is and whether he was a decisionmaker or had any influence over anyone making the decision to terminate Fontenot.

Third, Fontenot contends that the age and experience of the two individuals who subsequently filled his position provides an inference of age discrimination because they were both much younger and less experienced than he was. [Doc. No. 31, pp. 1-3]. Fontenot claims that he was initially replaced by André Robicheaux ("Robicheaux"), who was thirty-two years old (thirty-six years younger than Fontenot). *Id.* at pp. 1-2 (citing Exh. 9, p. 2). Robicheaux had been with RNDC as a sales representative for two and a half years and had been employed as a "relationship" banker prior to his employment with RNDC. *Id.* After Robicheaux was promoted a year and a half later, Josh Tate ("Tate") was hired for the position; he was twenty-six years old (forty years younger than Fontenot). *Id.* at 2. Tate had been with the company as a sales representative for two and a half years and had worked as a server or bartender for five and a half years before beginning employment with RNDC. *Id.* at pp. 2-3 (citing Exh. 9, p. 3). In opposition, RNDC claims that the age and experience of Robicheaux and Tate are not relevant to the reason why Fontenot was terminated because they applied, and were chosen, for the position after Fontenot was terminated. [Doc. No. 32, pp. 2-4].

The fact that Robicheaux, at an age less than forty, replaced Fontenot allows Fontenot to make his *prima facie* case as to the fourth element. "[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148. As this evidence is properly presented in the *prima facie* case, it would not be enough to show pretext on its own. However, Fontenot's *prima facie* case along with evidence of indirect comments

referencing Fontenot's age and a dispute as to Fontenot's job performance is "sufficient to create a jury issue of intentional age discrimination." *See Bienkowski*, 851 F.2d at 1507.

**III.     CONCLUSION**

For the foregoing reasons, RNDC's Motion for Summary Judgment [Doc. No. 17] is DENIED.

Monroe, Louisiana, this 13th day of October, 2017.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE